**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                      No. 1:18-cr-02844-JCH-1

DOMINICK MILIA,

     Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Dominick Milia's Amended Motion to Suppress Evidence (ECF No. 50). The Court held an evidentiary hearing on the motion on February 27, 2020 and June 29, 2020. After carefully considering the motion, briefs, evidence, and being otherwise fully informed, the Court concludes that the motion should be denied.

**I.    FACTUAL BACKGROUND**

The Court makes the following finding of facts, as supported by the record, in accordance with Federal Rule of Criminal Procedure 12(d). Before the relevant events in this case, Defendant was released from state prison and placed on probation. Upon being released from prison in 2015, Defendant signed a Standard Conditions of Probation form, which read in relevant part: "I will get permission from my Probation/Parole Officer before … [c]hanging residence;" "I will not … have in my possession, at any time, firearms, ammunition, or other deadly weapons;" "I will permit any Probation/Parole Officer to visit me at my home … at any time. I will permit a warrant-less search by the Officer of my person, automobile, residence … if he/she has reasonable cause to believe

the search will produce evidence of a violation of my conditions of probation." Govt.'s Ex. 1, ECF No. 54-1.

In the summer of 2018, Defendant violated several probation conditions and fled from probation supervision. In response, New Mexico Probation and Parole Officer Edmund Vigil applied for a bench warrant for Defendant's arrest. Motion Hearing Transcript, Feb. 27, 2020, 46:8-17 (Feb. Mot. Hr'g. Tr.), ECF No. 64; Govt.'s Ex. 3. The state judge approved the request and issued the arrest warrant on May 29, 2018. Govt.'s Exs. 5-7.

Upon the warrant's issuance, Clarence Banks went to search for Defendant on June 5, 2018. Feb. Mot. Hr'g. Tr. 93:6-8; 97:12. Banks is a Fugitive Apprehension Officer with the New Mexico Department of Corrections. *Id.* 68:19-21. The Fugitive Apprehension group is a Security Threat Intelligence Unit (STIU). *Id.* 69:21. Banks' primary job is to recovery probation and parole absconders and he is trained to arrest and transport and transport offenders. *Id.* 70:17-19; 73:17-20. Arrest warrants for probation and parole absconders are referred to Banks' office, assigned to an investigator, and then Banks and investigators go about finding and apprehending absconders. *Id.* 69:21-25. Before the state court issued the bench warrant, Banks spent several weeks unsuccessfully attempting to locate Defendant by visiting and surveilling his last known address and telephoning him. *Id.* 77:4 -22; 78:13-14. Banks was familiar with Defendant because just a short time earlier, in March 2018, Banks had arrested Defendant on unrelated matters. *Id.* 120:1.

An anonymous tipster told probation and parole investigators that Defendant was staying at a motel in Albuquerque and provided investigators the exact room number. *Id.* 79:6-10. Within an hour of receiving the tip, Banks assembled a team of STIU officers and went to the motel. *Id.* 79:12-19; 110:18-22. As Banks and his team approached the room, a man opened the door and exited. *Id.* 81:16-18. Through the open door, Banks saw Defendant inside. *Id.* 85:21-22. Several

2

other people were also within. *Id*. 86:9. Banks took two quick steps towards the door to catch it before it closed. *Id*. 85:24-25.

As he stood in the room's threshold, Banks drew his gun, announced his presence, commanded everyone to put their hands up, and ordered Defendant to come towards Banks. *Id*. 86:3-6. As all the occupants in the room had their hands up, Defendant brought his hand to his waistband and surrendered a gun by dropping it on the floor. *Id*. 86:22 – 87:1. Defendant and the other occupants exited the room and he offered no resistance as the officers took him into custody. *Id*. 87:1-7.

According to Banks, the room contained the gun, visible boxes of ammunition, and drug paraphernalia, including hypodermic needles and a scale. *Id*. 90:4-12.[1] Banks did not search the room. *Id*. 123:19-20. He instead photographed everything that was in plain view, such as the gun and drug items. *Id*. 123:18 – 124:2. The correctional officers then called their counterparts at the New Mexico State Police to take custody of Defendant and others in the room. *Id.* 117:14; Motion Hearing Transcript, June 29, 2020, 29:14-19 (June Mot. Hr'g. Tr.), ECF No. 76. State police arrived within ten minutes. June Mot. Hr'g. Tr. 10:18-21.

## II.     PROCEDURAL BACKGROUND

On August 29, 2018, a federal grand jury charged Defendant with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). On December 21,

---

[1] Although Banks testified that the contraband was in plain view, Defendant's witness testified that she was one of the occupants in the room and that she observed no drugs, needles, ammunition, nor did she see a gun in Defendant's possession. June Mot. Hr'g. Tr. 9:17-19; 15:25 – 16:10. The Court credits Banks' testimony regarding his observations over that of Defendant's witness because his observations are corroborated by other evidence in the record, including the photographs of a gun and ammunition that Banks took after the motel room was cleared.

2019, Defendant filed an amended motion to suppress the gun evidence.[2] Defendant does not challenge the warrant for his arrest. Rather, he argues that the search of his motel room violated the Fourth Amendment because it was accomplished without a warrant, consent, or any form of reasonable suspicion or probable cause. Defendant also argues that officers did not comply with the knock-and-announce rule before entering. Lastly, Defendant claims that the probation and parole officers lacked authority to arrest him, and that his arrest should have been executed by traditional law enforcement officers.

## III.    DISCUSSION

### A. Fourth Amendment Analysis

The Fourth Amendment provides in relevant part: "The right of the people to be secure … against unreasonable searches and seizures." U.S. Const. amend. IV. In general, law enforcement officers must obtain a warrant supported by probable cause before conducting a search or seizure. *Kentucky v. King*, 563 U.S. 452, 459 (2011). "Although 'the defendant bears the burden of proving whether and when the Fourth Amendment was implicated,' … '[t]he government then bears the burden of proving that its warrantless actions were justified [by an exception],'" *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020) (quoting *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017)) (then quoting *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994)). "If the government establishes that an exception to the warrant requirement applies, the search is constitutional." *Neugin*, 958 F.3d at 930 (citing *United States v. Maestas*, 2 F.3d 1485, 1491-92 (10th Cir. 1993)). "When a search violates the Fourth Amendment, the exclusionary rule normally dictates that evidence obtained as a result of that search be suppressed." *United States v.*

---

[2] Defendant's original motion was filed on December 19, 2019. *See* ECF No. 49. The Court denies as moot the original motion because his amended motion supersedes it.

*Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005). "Suppression of evidence, however, has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 347 (2006) ("the exclusionary rule is not a remedy we apply lightly.")

### i. Standing

The parties dispute whether Defendant has standing to challenge the search. Defendant claims that he resided at the motel room or, alternatively, that he was the renter's invited guest. The Government disputes both arguments, contending that Defendant was simply on the property and has no standing to challenge his arrest there. "A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated." *United States v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995) (quoting *United States v. Rubio–Rivera,* 917 F.2d 1271, 1274 (10th Cir.1990)). "Standing to lodge such a challenge depends upon two factors: (1) whether one demonstrated by his conduct a subjective expectation of privacy, and (2) whether society is prepared to recognize that expectation as reasonable. *Id.* (citing *Smith v. Maryland,* 442 U.S. 735, 740 (1979); *United States v. Soto,* 988 F.2d 1548, 1552 (10th Cir. 1993)). "Fourth Amendment rights are personal, and, therefore, a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises." *United States v. Worthon,* 520 F.3d 1173, 1178 (10th Cir. 2008) (quotation marks and citations omitted).

An invited guest may possess a reasonable expectation of privacy in the premises of his host, but "[m]ere physical possession or control of property is not sufficient to establish standing to object to a search of that property." *Conway,* 73 F.3d at 979 (citing *United States v. Arango,* 912 F.2d 441, 444–446 (10th Cir.1990)). "Although a defendant need not come forward with

documentation establishing legal possession of the area searched, he must at least demonstrate, in the case of a motel room, that he was the invited guest of the renter of the premises." *Id.* Defendant says that he resided at the motel and had a legitimate expectation of privacy there. For the sake of ruling on the motion, the Court will assume that this is true, and that Defendant had a legitimate expectation of privacy in the motel room to give him standing.

### ii. Executing the Warrant

Despite this conclusion, Defendant has failed to show a Fourth Amendment violation. The Supreme Court's decision in *Payton v. New York,* 445 U.S. 573 (1980), lays out the requirements for an arrest made in a home. "In *Payton,* the Supreme Court noted that despite special constitutional protection for the home, 'an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling.'" *United States v. Perez-Jacome*, 356 F. App'x 212, 215 (10th Cir. 2009) (quoting *Payton,* 445 U.S. at 603)). This principle extends to an arrestee's motel room, which is equivalent to a temporary residence. *See Stoner v. California,* 376 U.S. 483, 490 (1964). "[The Tenth Circuit has] interpreted *Payton* to create a two-prong test for determining when an arrest warrant alone is sufficient to justify entrance into a home: officers must establish a reasonable basis for believing that the suspect 'both (1) lived in the residence and (2) could be found within at the time of entry.'" *Perez-Jacome*, 356 F. App'x at 215 (quoting *Valdez v. McPheters,* 172 F.3d 1220, 1225 (10th Cir.1999)).[3]

---

[3] Conversely, an officer generally may not search a third-party's residence based on an arrest warrant without having a search warrant for the premises. *See Steagald v. United States,* 451 U.S. 204, 205-06 (1981). Here, Defendant does not ask for an application of the *Steagald* standard. He instead claims that "the motel room was his current residence." Def.'s Reply, ECF No. 55 at 3.

At the suppression hearing, Defendant did question Banks about whether he reasonably suspected that Defendant would be in the motel room. *See e.g.* Feb. Mot. Hr'g. Tr. 103:21 – 104:105:3. This arguably could be a challenge under *Payton*'s two-prong test concerning whether an arrest warrant alone is sufficient to justify entrance into a home. However, Defendant did not develop this argument in the opening brief of his motion or his reply brief. For instance, he did not cite *Payton*'s test or link facts to that test. To the extent that Defendant now argues that officers lacked reason to believe that he lived at the motel room and would be present there, this argument is forfeited. *See Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine."). The Court therefore concludes that *Payton*'s requirement that Banks reasonably believed that Defendant lived at the motel room and was present is undisputed. Thus, the arrest warrant alone authorized entry into the motel room.

### iii. Seizure of the Incriminating Evidence

"A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). "But there are exceptions to the warrant and probable-cause requirements for searches of probationers and parolees and their homes." *United States v. Mabry*, 728 F.3d 1163, 1166 (10th Cir. 2013) (internal quotation marks omitted). Namely, "[t]here are two ways to evaluate the reasonableness of a warrantless probation search." *Leatherwood v. Welker*, 757 F.3d 1115, 1120 (10th Cir. 2014). First, the "totality-of-the-circumstances exception," *id*. to the Fourth Amendment "authorizes warrantless searches without probable cause (or even reasonable suspicion) ... when the totality of the circumstances renders the search reasonable." *Mabry*, 728 F.3d at 1166 (footnotes omitted). Second, under the "special needs exception," to the warrant requirement, "a probation search will

satisfy the Fourth Amendment if it is carried out pursuant to state law which itself satisfies the Fourth Amendment's reasonableness requirement." *Leatherwood*, 757 F.3d at 1120 (citations omitted). The Government argues that the seizure of the incriminating evidence satisfied both exceptions. Because the record shows that the evidence was obtained through a valid search under the totality of the circumstances, the Court does not consider the special needs exception.

The totality of the circumstances exception "is predicated on (1) the reduced (or absent) expectation of privacy that the Court would recognize for probationers and parolees and (2) the needs of law enforcement." *Mabry*, 728 F.3d at 1167. When, as here, a probationer is subject to probation search conditions, those conditions "considerably diminish the probationer's reasonable expectation of privacy." *Leatherwood*, 757 F.3d at 1120 (citing *United States v. Knights*, 534 U.S. 112, 119-20 (2001)). Defendant's probation conditions subjected his person and/or residence to a warrantless search if the probation officer had "reasonable cause to believe the search will produce evidence of a violation of [the probationer's] conditions of probation."  Govt.'s Ex. 1, ECF No. 54-1. New Mexico correctional policies limit probation and parole officers' search authority to "when there is reasonable suspicion to believe that the offender is in possession of prohibited items or that there is a reasonable suspicion that a violation of [the offender's] probation or parole has occurred." New Mexico Corrections Department, PPD Search of Offender's Person, Home, or Property; and Processing Confiscated Evidence or Property, CD-050700, 2 (1994 rev. 2019), Def.'s Ex. C. "Given [Defendant's] diminished expectation of privacy as a probationer, and the State's interest in ensuring he did not violate the law, the search of his house was reasonable if supported by reasonable suspicion." *Leatherwood*, 757 F.3d at 1120.

"Reasonable suspicion accrues when an officer possesses a particularized and objective basis for suspecting criminal conduct under a totality of the circumstances." *United States v.*

*Cortez*, 965 F.3d 827, 834 (10th Cir. 2020) (quotation marks and citation omitted). "The reasonable suspicion analysis does not consider each of an officer's observations in isolation, but rather is based on the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense." *United States v. Garcia*, 751 F.3d 1139, 1143 (10th Cir. 2014) (quotation marks and citations omitted). Reasonable suspicion "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Fager*, 811 F.3d 381, 386 (10th Cir. 2016) (quotation marks and citations omitted). The Government bears the burden of demonstrating the reasonableness of the suspicion. *Cortez*, 965 F.3d at 834.

Officers had much more than suspicion to enter Defendant's room – they had a warrant for his arrest. In addition, the on-the-scene circumstances at the room contributed to the officers' reasonable suspicion that Defendant had violated his probation and engaged in illegal activity. He was residing in an unauthorized motel room that was littered with visible ammunition and drug paraphernalia. In response to Banks' commands to put his hands up, Defendant voluntarily surrendered a firearm which he was not allowed to have. Considering the totality of the circumstances, the officers had ample reasonable suspicion that Defendant violated his conditions of probation.

### iv. Arresting Authority of Correctional Officers

Defendant additionally challenges the probation and parole officers' authority to conduct arrests. He believes that executing an arrest warrant is a traditional law enforcement activity reserved for certified law enforcement officers and that Banks should have waited for traditional

law enforcement officers to arrest him. However, Defendant's argument conflicts directly with New Mexico Statute Annotated 1978, § 33-1-10(A), which expressly empowers correctional officers with arresting authority in certain circumstances, providing that:

> Correctional officers of the corrections department, or any employee of the corrections department who has at the particular time the principal duty to hold in custody or supervise any person accused or convicted of a criminal offense or placed in the legal custody or supervision of the corrections department, shall have the power of a peace officer with respect to arrests and enforcement of laws … when supervising any person committed to or under the supervision of the corrections department anywhere within the state; or when engaged in any effort to pursue or apprehend any such person.

N.M. Stat. Ann. § 33-1-10 (A). "Peace Officer" is a public officer "vested by law with a duty … to make arrests for crime." § 33-1-12(C). "Supervising" means, among things, "the performance … by probation and parole officers [of] … searches and seizures conducted alone or in cooperation with a state or local law enforcement agency." § 33-1-10(C)(3). Putting together these definitions, Banks was empowered – if not obligated – to arrest Defendant because he fled while under correctional supervision. This statutory authority is consistent with Banks' testimony that his "primary job" was "to apprehend probation, parole absconders, people who have failed to report and their whereabouts are unknown." Feb. Mot. Hr'g. Tr. 70:17-19.

Defendant recognizes that § 33-1-12(A) empowers probation and parole officers with certain arresting authority, but he maintains that they lacked authority to arrest him for two reasons. First, he points out that probation and parole officers are not law enforcement officers for purposes of the New Mexico Tort Claims Act's (TCA) waiver of immunity for torts committed by government agents because their principal duties do not include holding in custody any person accused of a criminal offense, maintaining public order, or making arrests for crimes. *Vigil v. Martinez*, 1992-NMCA-033, ¶¶13-18, 113 N.M. 714, 718-21, 832 P.2d 405, 409-12. However, the "principal duties" determination for the TCA's waiver of immunity has no relation to correctional

officers' statutory authority to arrest probationer absconders under § 33-1-10 (A), and Defendant has cited no authority otherwise. He likewise cited no authority for his second argument, that under New Mexico's rules of criminal procedure, only a law enforcement officer was permitted to serve the arrest warrant on Defendant. *See* NMRA, Rule 5-210(A) (stating that "[w]henever a warrant is issued in a criminal action, it shall be directed to a full-time salaried state or county law enforcement officer[.]"). Defendant cited no authority that this rule requires traditional law enforcement officers to serve arrest warrants on probation absconders. The Court therefore disregards this unsupported assertion. *See* D.N.M.LR-Cr. 47.7 ("a motion … must cite authority in support of legal positions advanced.").

Defendant next points to several Department of Corrections policies which he believes Banks did not follow, which he believes require made his arrest invalid. For instance, a policy governing recovery of absconders provides that, "[l]aw enforcement agencies should be notified and an arrest warrant issued."[4] Def.'s Ex. C, ECF No. 50-3, 6. These same polices provide that "[u]pon issuance of the bench warrant … the PPO and the STIU will make reasonable attempts to execute the warrant on the offender with law enforcement in order to declare the probationer as an absconder."[5] *Id*. at 8. Furthermore, if the "PPO subsequently receives information related to the whereabouts of the absconder, the PPO shall notify law enforcement and/or STIU staff for assistance in the service of the warrant." *Id*. at 8-9. And another section of the policy provides that

---

[4] New Mexico Corrections Department, Probation/Parole Violations and Absconders, Preliminary Revocation Hearings, Arrest of Offenders and Arrest Orders, CD-052800 § F (1994 rev. 2018).

[5] New Mexico Corrections Department, Probation/Parole Absconders, CD-052802 § A(4) (1994 rev. 2018).

"unless an emergency exists, an arrest of an offender will be done with the assistance of a law enforcement agency officer(s)."[6]

However, to the extent these polices contain any purported inconsistencies, Defendant failed to explain whether the exclusionary rule even applies to violations of state agency policies. Before the suppression hearing, the Court entered an order asking the parties to prepare argument on the issue. In response, the Government tendered caselaw tending to show that "[t]he federal exclusionary rule … does not extend to violations of statutes and regulations." *United States v. Procknow*, 784 F.3d 421, 429 (7th Cir. 2015) (citations omitted); *United States v. Hinton*, 222 F.3d 664, 674 (9th Cir. 2000) ("suppression is not the appropriate remedy for a failure to follow agency regulations.") (citation omitted). "The few cases" where the Supreme Court has "suppressed evidence for statutory violations … arose directly out of statutory violations that implicated important Fourth and Fifth Amendment interests." *United States v. Dreyer*, 804 F.3d 1266, 1279 (9th Cir. 2015) (quoting *Sanchez-Llamas*, 548 U.S. at 348)).

For his part, Defendant pointed to no authority supporting his theory that the federal exclusionary rule reaches violations of state policies. Given that the exclusionary rule is not to be "appl[ied] lightly," it would be extraordinary to apply it as a remedy where no statutory or constitutional violation occurred. *Sanchez-Llamas v. Oregon*, 548 U.S. at 347. Defendant has failed to carry his burden of proof to show that he was subjected to an illegal arrest under the Fourth Amendment.

**v. Knock-and-Announce**

---

[6] New Mexico Corrections Department, Arrest of Offenders and Arrest Orders, CD-052803 § A (1994 rev. 2018).

Defendant contends that officers violated the knock-and-announce requirement by not first announcing their presence and knocking on the motel room door. Under the knock-and-announce rule, a police officer, even one armed with a warrant, may not ordinarily enter a residence without knocking on an individual's door, announcing his identity and purpose, and then waiting a reasonable amount of time before forcing entry into a home. *Wilson v. Arkansas*, 514 U.S. 927, 934-36 (1995). As Defendant correctly notes, the exclusionary rule does not apply to a violation of the Fourth Amendment knock-and-announce requirement. *See Hudson v. Michigan*, 547 U.S. 586 (2006). However, Defendant cites the D.C. Circuit's opinion in *United States v. Weaver*, 808 F.3d 26 (D.C. Cir. 2015), for the proposition that *Hudson* is limited to search warrants, and that because the alleged violation here occurred during execution of an arrest warrant, the exclusionary rule applies.

The Court need not address Defendant's argument under *Weaver*. As a matter of law, the knock-and-announcement rule did not apply on these facts because the motel room door was open and officers were in the Defendant's presence. *See United States v. Remigio*, 767 F.2d 730, 733 (10th Cir. 1985) ("[G]overnment officials, armed with a warrant, entering a house through an open door and in the presence of a defendant, need not comply with the provisions of 18 U.S.C. § 3109 [the federal knock-and-announce statute that allows officers to break the door of a house to effect an arrest warrant only after stating his authority and purpose].”); *United States v. Mendoza*, 281 F.3d 712, 717 (8th Cir. 2002) (holding that when the suspect's door is open, the knock-and-announce requirement “is vitiated.”) (citing, *inter alia*, *Remigio*, 767 F.2d at 730) (other citations omitted)); *see also United States v. Nielson*, 415 F.3d 1195, 1199 (10th Cir. 2005) (compliance with the knock-and-announce rule can be excused when officers have reasonable suspicion that

13

complying with the rule would be futile) (citing *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)). The knock-and-announce rule does not apply to the facts of this case.

IV.     **CONCLUSION**

The correctional officers were authorized to execute a warrant for Defendant's arrest by entering the motel room without having to knock on the open door. They permissibly seized the gun and ammunition evidence. Because the incriminating evidence was lawfully seized under the Fourth Amendment, it will not be will not be suppressed as fruit of the poisonous tree.

**IT IS THEREFORE ORDERED that** Defendant's Amended Motion to Suppress Evidence **(ECF No. 50)** is **DENIED** and that Defendant's Opposed Motion to Suppress Evidence **(ECF No. 49)** is **DENIED** as **MOOT**.

**IT IS SO ORDERED**.

_____
HON. JUDITH C. HERRERA
SENIOR UNITED STATES DISTRICT JUDGE